UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ROHANI RAMNAUTH,                                   :

                Plaintiff,                      :          05 Civ. 3279 (PAC)

    -against-                                          :          OPINION & ORDER

JOHN E. POTTER, POSTMASTER GENERAL,    :

                Defendant.                  :

-------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Pro se Plaintiff Rohani Ramnauth ("Ramnauth") brings this Title VII

action, 42 U.S.C. §§ 2000e, et seq., alleging that her former employer, the United States

Postal Service ("USPS"), discriminated against her on the basis of her race and gender by

denying her request for reassignment back to her former position in Brooklyn, which she

vacated in order to voluntarily transfer to a position in Florida.  Ramnauth filed the action

on March 25, 2005, and USPS moved for summary judgment on March 1, 2007.  For the

reasons discussed below, the Court grants the summary judgment motion in its entirety,

and dismisses the action.[1]

## FACTS[2]

Rohani Ramnauth was born in Guyana, South America, and considers her race

---

[1] The Court also dismisses the action pursuant to Rule 12(b)(1), based on Ramnauth's failure to exhaust remedies, which USPS included in its summary judgment motion, but is more appropriately raised as a jurisdictional matter.  (See infra.)

[2] The facts herein are taken primarily from USPS's Local Rule 56.1 Statement in Support of Motion for Summary Judgment, dated March 1, 2007, and the exhibits thereto.  Although Ramnauth has failed to submit her own Rule 56.1 Statement in response as required by the Local Rules, the Court has only deemed USPS's stated facts to be admitted to the extent that they are uncontroverted by evidence in admissible form submitted by Ramnauth with her opposition "Affidavit," pleadings and her deposition (which is incomplete, as submitted by USPS).  See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001); Wilson v. New York City Hous. Auth., 2007 WL 1032262 (S.D.N.Y. Apr. 2, 2007).

and nationality to be Indian.  From January 1994 to November 2003, she was employed

by USPS as a "Level 6 Administrative Clerk" at the Brooklyn Vehicle Maintenance

Facility ("the Brooklyn VMF").  Ramnauth requested a transfer to another USPS facility

in Florida to be closer to her ailing father.  In November 2003, the transfer was granted

and Ramnauth began working as a "Window Clerk" in Florida.  Ramnauth immediately

regretted her decision to transfer, and requested to be transferred back to her Brooklyn

VMF post after just one day of work in Florida.[3]

Ramnauth understood that if she transferred out of her position, she would

lose her seniority, but she claims that personnel at the Brooklyn VMF reassured her that

she could be "reassigned back to [her] position within thirty days of reassignment."

(Ramnauth Dep. 190.)  In mid-November 2003, however, Ramnauth was informed that

she could not return to her position at the Brooklyn VMF because her job no longer

existed.  It had been designated an "incumbent only" position and the position reverted

(i.e., terminated) when Ramnauth transferred to Florida.  All other positions in the

Triboro area were being "withheld," meaning they were was reserved for local employees

whose positions had been eliminated.

Nine months later, in September 2004, Ramnauth contacted a USPS Equal

Employment Opportunity ("EEO") counselor and filed a complaint alleging

discrimination in connection with the transfer denial.  On November 27, 2004, the USPS

EEO dismissed her complaint as untimely.  Ramnauth then filed this action on March 25,

---

[3] Ramnauth alleges that she was unhappy at the new position because the management had her performing "Mail Handler work," and that she was "injured on several occasions pushing and pulling [h]eavy equipment carrying tons of mail."  (Am. Compl.)  The Court notes that in Ramnauth's transfer request, she requested the position of "carrier or clerk" and that she understood "carrier" to be someone who delivers the mail. (Ramnauth Dep. 188.)  Apparently, Ramnauth was not able to immediately work as a Window Clerk because she lacked the necessary training, and instead, was given other tasks to perform, including dock work, until training was available.

2005,[4] seeking backpay and reinstatement.  She filed an Amended Complaint on April

13, 2005.  USPS now moves for summary judgment on the grounds that Ramnauth failed

to exhaust administrative remedies; she cannot establish a prima facie case of

discrimination; and she cannot rebut USPS's nondiscriminatory rationale for its actions.

Ramnauth responded with a three-page "Affidavit" opposing the motion, but submitted

no other evidence or materials from which to demonstrate genuine issues of fact.

## DISCUSSION

### I. Subject-Matter Jurisdiction

As an initial matter, USPS contends that the Amended Complaint must be

dismissed because Ramnauth failed to timely exhaust her administrative remedies.  The

Court agrees.

Prior to bringing a Title VII action, "a federal government employee must

timely exhaust all administrative remedies at [her] disposal."  Belgrave v. Pena, 254 F. 3d

384, 386 (2d Cir. 2001) (citation omitted).  Pursuant to 29 C.F.R. § 1614.105(a)(1), a

federal employee must contact an EEO counselor within 45 days of the alleged

discriminatory action, or within 45 days of the effective date of personnel action.  If this

requirement is not met, and equitable tolling is inapplicable, then the action must be

dismissed, as Judge Mukasey explained:

> If a claimant has not met the filing requirements, either
> directly or with the aid of equitable tolling, there is no
> waiver of sovereign immunity, and accordingly, no subject
> matter jurisdiction. Put differently, the government has not
> consented to be sued by a federal employee who has neither
> met with her EEO counselor within 45 days of the alleged
> discriminatory act, nor satisfactorily explained her failure
> to do so. Accordingly, defendant's motion here properly is

---

[4] This case was initially assigned to the Honorable Michael Mukasey, and then the Honorable Denise Cote;
it was reassigned to this Court on August 4, 2005.

characterized as one pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss for lack of subject-matter jurisdiction.

Dillard v. Runyon, 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996).

Ramnauth concedes that she did not contact an EEO counselor until August 2004, approximately nine months after she was denied transfer back to the Brooklyn VMF.[5]  She also concedes that in December 2003, she signed a document entitled "EEO Complaint Procedures" (Feldman Decl. Ex. 23), which advises that all discrimination charges must be made within 45 days.[6]

Furthermore, there is no evidence in the record to warrant equitable tolling, which is only available in very limited circumstances.[7]  See Dillard, 928 F. Supp. at 1325 ("Put simply, equitable tolling may be available when the plaintiff's failure to meet a deadline is someone else's fault.").  In her opposition Affidavit, Ramnauth seems to explain that she did not file a complaint within the 45-day limit because she had been in contact with her postal union, and they were assuring her that they were looking into the matter:

> Every time my husband would call, the union would tell him they were working on the case or they are waiting for a reply from Helen Moore.  I think Helen Moore was the problem because Florida is willing to release me to my position and Brooklyn is willing to take me back.  This is the reason why this law suit [sic] was brought upon Ms. Moore and this is the reason for this suit to be filed late.

---

[5]  The date of the complaint filed with the USPS's EEO office is September 14, 2004.

[6] Ramnauth contends that although she signed the document, she did not read it.  She does, however, acknowledge that she has prior experience filing USPS EEO complaints—she timely filed a complaint in 1999 for alleged discrimination for not being selected for a supervisory position.  (Ramnauth Dep. 45-49.)

[7] Equitable tolling is available when: (1) a plaintiff actively pursued her judicial remedies in the prescribed time period; (2) she was induced or tricked by her adversary's misconduct into allowing the deadline to pass; (3) the court leads a plaintiff to believe that she has done all that is required; (4) the plaintiff has received inadequate notice; or (5) when a motion for the appointment of counsel is pending. See Dillard, 928 F. Supp. at 1325 (citations omitted). None of the factors is applicable here.

(Ramnauth Opp. to Summ. J. Mot. 3.)  Even assuming, arguendo, that the union (who is a

non-party) somehow mislead Ramnauth into postponing the filing of the complaint, she

still has not explained why it took nearly nine months to bring the complaint.  Beyond

this conclusory statement, there is simply no evidence in the record to sustain equitable

tolling.  Consequently, the Court lacks subject-matter jurisdiction over these claims, and

they must be dismissed pursuant to Rule 12(b)(1).

## II. Summary Judgment Motion

Even if the Court had jurisdiction to hear the action, the claims would

nonetheless be dismissed on summary judgment.

## A. Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Summary judgment should only be granted if "the nonmoving party 'has failed to make a

sufficient showing on an essential element of [her] case with respect to which [she] has

the burden of proof.'"  Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The Court must "resolve all

ambiguities and draw all factual inferences in favor of the nonmoving party."  McClellan

v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted).  Summary judgment should

not be granted where issues of fact are "genuine," and "a reasonable jury could return a

verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).

While summary judgment is normally not appropriate in employment

discrimination cases, where the employer's intent and state of mind are in dispute,

Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000), if there is a complete

lack of evidence in support of the plaintiff's position, or the evidence is so

overwhelmingly slanted in favor of the defendant "that any contrary finding would

constitute clear error," however, then summary judgment is appropriate.  Danzer v.

Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998).  A plaintiff "is not entitled to a trial

simply because the determinative issue focuses on the defendant's state of mind."  Dister

v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1988).  As this Circuit has cautioned:

> The summary judgment rule would be rendered sterile ... if
> the mere incantation of intent or state of mind would
> operate as a talisman to defeat an otherwise valid motion.
> Indeed, the salutary purposes of summary judgment—
> avoiding protracted, expensive and harassing trials—apply
> no less to discrimination cases than to commercial or other
> areas of litigation.

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).

A plaintiff cannot create a disputed issue of fact by offering "conclusory

allegations, conjecture, and speculation."  Niagara Mohawk Power Corp. v. Jones Chem.,

Inc., 315 F.3d 171, 175 (2d Cir. 2003) (internal citations and quotation marks omitted).

Instead, to survive summary judgment, plaintiff's facts "must be material and of a

substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer

inferences, conjectural, speculative, nor merely suspicions."  Contemporary Mission, Inc.

v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal citations and

quotation marks omitted).

The standards do not change for pro se litigants; but they are afforded wide latitude and their submissions are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, the Court must "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest'." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

### B. McDonnell Douglas Framework

The Court reviews USPS's motion for summary judgment under the three-part burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, Ramnauth must establish a prima facie case that she suffered from a discriminatory employment action on the basis of a protected class "by either direct, statistical or circumstantial evidence." Bickerstaff v. Vassar Coll., 196 F.3d 435, 445 (2d Cir. 1999); see also McDonnell Douglas, 411 U.S. at 802. The burden then shifts to USPS to provide a legitimate, nondiscriminatory reason for its actions. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); see also McDonnell Douglas, 411 U.S. at 802. If USPS articulates a nondiscriminatory reason for its conduct, the inference of discrimination raised by Ramnauth's prima facie case "simply drops out of the picture," St. Mary's Honor Ctr., 509 U.S. at 511, and the burden shifts back to her to prove that USPS's nondiscriminatory explanation is pretextual. See id. at 507-08.

### i. Prima Facie Discrimination Claim

To establish a prima facie claim, Ramnauth "must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of

unlawful discrimination." Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254

(1981).  Although this burden is minimal, Carlton v. Mystic Transp., Inc., 202 F.3d 129,

134 (2d Cir. 2000), Ramnauth has failed to establish a prima facie case because she has

not demonstrated that there were any available positions.

USPS has presented evidence that the only position Ramnauth applied for,

her former position of Administrative Clerk at the Brooklyn VMF, had "reverted," and

therefore was unavailable.  According to David Rudy, the Manager of Labor Relations of

the USPS Triboro District, in 1993, the postal union and USPS agreed to make the Level

6 Administrative Clerk position at VMF an "incumbent only" position, meaning that the

USPS "decided to discontinue ('revert')" the position "as soon as the employee in the

position (the 'incumbent') left the position, whether through retirement, promotion,

reassignment, or otherwise."  (Rudy Decl. ¶ 5.)[8]  Rudy also confirms that this position

"remains reverted, meaning that it is neither filled nor open, and [USPS] has not

considered applicants for the position."  (Rudy Decl. ¶ 10.)  Moreover, any other

positions which might become available were "withheld" from posting and reserved for

postal employees who would otherwise be "excessed" (i.e., terminated).  (Rudy Decl. ¶¶

14-17.)  Thus, there were no available positions when Ramnauth said she wanted to

return to New York.

Ramnauth offers no evidence to rebut USPS's evidence that this position

was not available.  She concludes that her position must still exist because "every boro

[sic] has an administrative clerk except Brooklyn which position I had so you see my

---

[8] David Rudy also attached a printout of the USPS's electronic program  ("Complement Management System") that is used to monitor all positions within the USPS.  The printout indicates that Ramnauth's former position indeed was classified as "incumbent only revert when vacant" effective November 1, 2003. (Rudy Decl. Ex. B.)

position is still there."  (Ramnauth Opp. to Summ. J. Mot. 3.)   This is textbook

speculation, and it cannot withstand a motion for summary judgment.  Consequently, she

has not established a prima facie case of discrimination.[9]

### ii. Nondiscriminatory Rationale & Pretext

Even if Ramnauth had established a prima facie case, the claim would

nonetheless fail because she has not established that USPS's nondiscriminatory rationale

for denying the transfer was pretextual.

Once a plaintiff establishes a prima facie case, the burden then shifts to the

defendant to provide a legitimate, nondiscriminatory reason for its actions.  See St.

Mary's Honor Ctr., 509 U.S. at 507.  Indeed, USPS has provided a legitimate,

nondiscriminatory reason for not transferring Ramnauth back to her former position—the

position "reverted"—it no longer existed.  The burden then shifts back to Ramnauth to

establish that this reason is merely a pretext for discrimination.

To survive this motion, Ramnauth must provide concrete, admissible

evidence from which a reasonable jury could find purposeful discrimination by USPS.

At the pretext stage, "the factual inquiry proceeds to a new level of specificity."  Id. at

518 (citation omitted).  She must provide enough evidence of pretext that a rational fact

finder could conclude that USPS's "presumptively valid reasons" for its conduct "were in

fact a coverup for a . . . discriminatory decision."  McDonnell Douglas, 411 U.S. at 805.

Ramnauth "may not prevail by establishing only [falsity], but must prove, in addition,

that a motivating reason was discrimination."  Bickerstaff, 196 F.3d at 447 (internal

quotation marks and citations omitted).  "[T]he evidence as a whole must be sufficient to

---

[9] Having determined that Ramnauth has not established a prima facie case, the Court need not determine whether a genuine issue of fact remains concerning Ramnauth's eligibility for the Level 6 Administrative Clerk position, which the parties dispute.

sustain an 'ultimate finding' of intentional discrimination."  Peterson v. City Coll., 32 F.

Supp. 2d 675, 684 (S.D.N.Y. 1995) (citation omitted).

Ramnauth alleges that she was denied transfer back to her former position

because various women employees in the personnel department did not like her, in part

because of her nationality, race and gender, and they conspired to keep her from

returning.  Specifically, she alleges that Helen Moore "doesn't like me" and she

"prevented me from going back to my position" because "she does not appreciate the fact

that I am Indian, of [A]sian background."  (Am. Compl.)  She elaborates that there is "a

credible witness" who works in the Brooklyn VMF office (but whom she has not

revealed) that "had a conversation with a supervisor by the name of Alison Hughes who

boast[ed] to [the witness] that she is going to make sure Ms. Moore prevented me from

coming back to my position."  (Ramnauth Opp. to Summ. J. Mot. 2-3.)  When questioned

at deposition concerning the alleged discrimination, Ramnauth suggested that Hughes did

not like her because she was "jealous" of her appearance and attention from male

employees.  When asked about how Hughes (who is African American) discriminated

against her, Ramnauth answered that Hughes was "jealous … of my appearance, my

nationality … [and] my overall character" (Ramnauth Dep. 307), and that "she didn't like

anyone who overpowered her ….  She didn't like me … maybe if I was a male ….

(Ramnauth Dep. 376.)

She further alleges that "[s]ince Sept. 11 I have been discriminated against

because a lot of individuals in the Post Office think that I am the same nationality as the

people from the Middle East." (Am. Compl.)

There is not a scintilla of evidence to support these assertions; and they are utterly insufficient to sustain a finding of discrimination.  At best, her evidence—which consists of only her own statements—supports her hypothesis that she was fired because certain women in her office were jealous of her and did not like her.  Even if she had evidence in support of this theory, however, jealousy is not a "discriminatory animus sufficient to sustain a jury verdict in favor."  Harris v. New York City Dep't of Homeless Servs. Eligibility, 1998 WL 205334 (S.D.N.Y. Apr. 28, 1998).  Nor is it sufficient for Title VII purposes that various employees or supervisors conspired to deny Ramnauth the transfer because they "disliked" her.  See id. ("[E]ven if [plaintiff] could prove that [defendant] did not like him or that she was jealous of him . . . [plaintiff] would still have failed to make a showing of discriminatory animus sufficient to sustain a jury verdict in his favor. Title VII protects individuals from discrimination specifically based upon race, color, religion, gender or national origin; it does not protect employees from the jealousies of their supervisors.").

As for Ramnauth's statements that she was treated differently after the September 11, 2001 terrorist attacks because employees mistakenly believed she was of Middle Eastern origin, she again provides no support for this allegation.  She presents no evidence that even hints at specific instances, or examples of discrimination, nor does she attempt to identify who allegedly treated her differently.

In short, no reasonable jury could find that Ramnauth carried her burden in demonstrating that USPS's legitimate nondiscriminatory reason for not transferring her back was merely a pretext for discrimination.

12

## CONCLUSION

This Court lacks subject-matter jurisdiction because Ramnauth did not

exhaust her administrative remedies.  Accordingly, the claims must be dismissed

pursuant to Rule 12(b)(1).  Moreover, USPS is entitled to summary judgment pursuant to

Rule 56.  USPS's motion is GRANTED and the claims are DISMISSED with prejudice.

The Clerk of the Court is ORDERED to close out this case.


Dated:  New York, New York
        August 20, 2007


SO ORDERED

PAUL A. CROTTY
United States District Judge

12

Copy Mailed To:

Rohani Ramnauth
Pro Se Rohani Ramnauth
5339 Flamingo Court
Coconut Creek, FL 33073